In the Matter of the Application of ANONYMOUS, for the Abrogation of the Adoption of ———————— ————————, a Minor Eleven Years of Age.

Surrogate's Court, Queens County, January 17, 1936.

*Joseph Lonardo*, for the petitioners.

*John T. Magan* [*Francis H. Meehan* of counsel], for the New York Foundling Hospital.

HETHERINGTON, S. The determination of this matter is approached with more than ordinary concern because of its effect upon, not only the property rights, but the general welfare, feelings

and sentiments of the parties. To grant it means the taking from the child such rights to maintenance and inheritance as it may have with regard to the foster parents; to deny it keeps the parties in a situation that has grown strained and difficult and from all appearances will become impossible of continuance.

These foster parents adopted this child some six years ago when she was between six and seven years of age. In about a year thereafter the foster mother states she noticed that the child had what she thought was St. Vitus' dance; that she sought medical aid but without beneficial result; that from that time on the child grew disobedient and unruly; that she appeared before visitors scantily clad and made immodest exhibition of herself; that she exploded fire crackers indoors; threw stones at her foster mother and called her names; threw a glass of water at her on another occasion; lay down in the public highway whereon automobiles were traveling; stole pennies from a nearby newsstand and money from her foster mother; that she quarrels with and assaults other children, striking them and scratching them with glass and wire; that she started paper fires in the cellar of the house; cuts the bedding and clothing; flooded the bath room; broke a chime clock on a visit to a friend; is generally destructive; refuses to learn her lessons; has been dismissed from school for bad conduct; will not heed reproof or correction and does not respond to kindness or suggestion. The foster father corroborates this testimony and both parents assert that the situation has grown intolerable. The minor was present at the inquiry but could not be induced to talk; and while it is testified to by a physician that she is a normal child, her appearance and actions indicated that there is certainly something amiss. While it be true that such conduct on the part of a natural child would form no basis for a refusal on the part of its parents to maintain the relationship, which relationship could never be dissolved, in the case of adoption a different rule prevails. Adoption is authorized by statute (Dom. Rel. Law, §§ 110–118); it was unknown to common law; and when the opportunity of parental affection and maintenance is extended to a child it is to be expected that respect, obedience and proper filial conduct will be returned by the child, and when that fails, the statute (Dom. Rel. Law, § 118) provides that the adoption may be abrogated. The situation here is a grave one for this child, but it arises from its own temperament and disposition and no matter how sympathetic we may feel toward her, consideration must be had for the other side of the case. To continue the relationship would only strain it; affection is already lost; it will not return but rather in its place will come dislike, repugnance and ultimate hatred, all of which

is against the interests of the child and the foster parents. From the hearing had before me and on the proof made, I find that the foster parents have made an honest effort to rear the child properly and determine that the child has been and is ill-behaved and has violated her duty toward her foster parents and that due regard for the interests of both the child and such foster parents require that such adoption be abrogated; let an order be made and entered accordingly and let the child be returned to the New York Foundling Hospital, the institution from whence she came. Submit such order on notice.