William J. Regah, S.
This is a proceeding brought by the foster parents of two infant children to abrogate the adoptions of the two infants who are sisters and who are now respectively 14 and 15 years of age. The original adoptions were finalized in this court on March 29,1963. The foster parents and children have resided together continuously since that date.
A citation was issued herein to Catholic Charities of Buffalo, Inc., a duly authorized agency, through whom the adoption placements were made. Legal counsel has appeared on behalf of Catholic Charities and has participated in this hearing. A guardian ad litem was also appointed by this court and has appeared herein to protect the interests of the children.
*662 This proceeding has been instituted pursuant to section 118-b of the Domestic Eelations Law which states in part: ‘ ‘ Foster parent who * * * shall have adopted a foster child from an authorized agency may apply to a judge or surrogate of the court in which the original adoption took place for the abrogation of such adoption because of the wilful desertion of such foster parent by such foster child or because of any misdemeanor or ill behavior of such child. ’ ’
The statute further provides that: “ If such judge or surrogate shall determine on the proofs made before him on the hearing of such application that the foster child has violated his duty toward such foster parent and that due regard to the interests of both requires that such adoption be abrogated, an order shall be made and entered accordingly.”
An abrogation proceeding of this type is a rarity. It is a creature of statute, not available to natural parents. While the statute clearly states that due consideration must be given to the interests of the foster parents as well as the interests of the foster child, it appears that the burden of proof required of the petitioners to set aside the adoption must be met by clear, convincing and satisfactory evidence, Proceedings of this type cannot be taken too lightly, nor should they, under any circumstances, be encouraged except in those few instances where the basis for granting an abrogation is clearly intended by the statute. It is reasonable to assume that many of the characteristics exhibited by children after living for several years in a particular household necessarily result from the background and training acquired by them from their foster parents and are not to be casually treated as hereditary.
In the instant proceeding the behavior problems complained of occurred during 1970. There was no testimony indicating any serious behavior problems from the time the original orders of adoption were signed on March 29, 1963 up to approximately February of 1970. There was testimony to the effect that the children ran away from home on two or three occasions between February and March of 1970 and that they had taken some undetermined amount of money from a family safe. The petitioners testified that the children had not been co-operative in performing routine household duties, such as dishes, cleaning, and so forth, and that there was lack of affection exhibited by both children. There was some testimony concerning an incident of shoplifting in a store, which incident was not corroborated and which was denied by each of the children. There was also some testimony relative to the children associating with undesirable companions.
*663 The children were petitioned to the Family Court of Erie County in March of 1970 and by order of that court are being held presently in a detention home. It is of interest to the court that the foster mother had taken a job that required her to be away from the home for approximately one year and that it was only after such employment that the most serious behavior problems complained of herein took place. Both foster parents should take particular note of such fact. Both petitioners testified that they still love their daughters and each of the children also expressed a mutual love for their foster parents. The foster children have advised the guardian ad litem that although they believe their foster parents to be strict, that they have learned a lesson and would make a greater attempt to conform to the wishes of their foster parents.
The foster parents have two older natural children, both boys, who apparently have always enjoyed a close relationship with the two girls. Even while in the detention home letters were written by the girls to at least one of the brothers.
Essentially, the above incorporates the factual situation as it developed on the hearing herein. Petitioners contend that in view of the acts of running away from home, in view of the incidents of disobedience and the company kept by the foster children, and in view of an apparent increase in lack of love and affection between them and the foster children, each of these adoptions should be abrogated. The attorney for Catholic Charities and the guardian ad litem have both expressed strong opposition to this proceeding and contend strongly that the incidents complained of herein are not such as to permit the abrogation.
A review of the cases moves this court to the conclusion that the abrogations herein should not be granted. It is stated in Matter of Buss (234 App. Div. 299, 300) that “ something more than behavior causing annoyance to the parents must be shown. Contumacious conduct based in volition — not merely in immaturity and incapability of self-restraint — must appear.”
In the case of Matter of Anonymous (157 Misc. 951), (cited by petitioners) the abrogation was granted relative to an eleven-year-old foster child who had been adopted when she was approximately six years old. This case related a continued course of conduct that has grown intolerable in spite of sincere efforts of the foster parents. At the hearing, although the minor could not be induced to talk, the Surrogate concluded (p. 952) that ‘ ‘ her appearance and actions indicated that there is certainly something amiss.”
*664 The case of Matter of Souers (135 Misc. 521) also advanced by petitioners, involved a course of continuous, abnormal conduct. It was stated therein (p. 525) that “ There was evidently something wrong in the child’s make-up, for he early developed a tendency to steal, and seemed to have no respect or no comprehension of the right of property. That, of itself, is perhaps not strange in small children, but the continued habit is abnormal.” In that case (p. 527) “ The tendencies of the child were evident to the foster parents before the formal adoption, but the proclivities of a child of four years certainly would not justify the abrogation; it is the continuation of such habits that justify the abrogation.”
In the case of Matter of Anonymous (8 Misc 2d 155) cited by petitioners, the abrogation of a seventeen-year-old foster child who was adopted when he was four years old was granted. In that case the evidence of complaints dated back to the time that the infant was sent to kindergarten. Again there was shown herein a continuous course of conduct that persisted in spite of the many efforts of the foster parents. The infant, furthermore, at the time of the proceeding therein, indicated that he had no particular affection for either of his foster parents.
In the case of Matter of Anonymous (6 Misc 2d 83) which also is cited in petitioners’ brief, the abrogation of a twelve-year-old boy who was adopted by the foster parents when he was three years old was granted. In that case, too, however, there was a showing of consistently bad conduct. The abrogation was granted because of the (p. 84) ‘ ‘ persistent ill behavior of this boy, his need of psychiatric therapy and abnormal conduct ”.
Thus it is evident that in order for this abrogation to be granted pursuant to section 118 of the Domestic Relations Law the behavior of the infant complained of must be such that one must almost conclude that such problem was present from birth and though not readily apparent at the time of the adoption, progressed over the years to such a point that the relationship between foster parents and foster child becomes completely intolerable. The complaint that children do not readily and willingly respond to household chores is not unusual. It is not unusual that teenagers should have a desire and tendency to leave home and at times do in fact leave home. The test is one of willful desertion and abandonment. That children fall into bad company is a danger that is forever present. These are not incidents of abnormal behavior. Such problems are the outgrowth of discipline, understanding and environment. The foster parents have made a sincere effort to raise these children properly. The children have been inclined to respond. The *665 opportunity and the potential to continue a happy parent-child relationship remain within reach.
Under all the circumstances, this court is far from convinced that the abrogation of these adoptions would he to the best interests of either the foster children or the parents or both. Contrary to the allegations contained in the petition the foster parents and the foster children continue to express mutual love and affection for each other. The testimony itself and the conversations with the foster parents and foster children clearly reflect the existence of a sufficiency of love and affection, of responsibility and respect that proper counseling and guidance could utilize in restoring and maintaining a healthy family unit. This matter should be returned to Family Court for continued guidance and attention.
It is the decision of this court, therefore, that the petition for the abrogation of the voluntary adoptions of each of these children be and it hereby is denied.